## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PRINCE MORRISON** | **CIVIL ACTION** |
| **VERSUS** | **NO.  06-10704** |
| **N. BURL CAIN, WARDEN,**<br>**LOUISIANA STATE PENITENTIARY** | **SECTION "F"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    PROCEDURAL BACKGROUND

The petitioner, Prince Morrison, is incarcerated in the Louisiana State Penitentiary

in Angola, Louisiana.[2]  Morrison and a co-defendant, Gerald Preston, were indicted by

an Orleans Parish grand jury on June 27, 1996, for the first degree murder of Darnell

Lopez.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case

as follows:

> In the early morning hours of May 10, 1996, after a night of
> socializing, friends Harold Fourcha, Jr., Darnell Lopez, Prince Morrison
> and Gerald Preston, purchased some liquor, and returned to the Desire
> Housing Project.  Harold Fourcha, Jr. was driving with Darnell Lopez
> riding in the front passenger seat and Prince Morrison and Gerald Preston
> seated in the left and right rear seats, respectively.  Lopez, Morrison and
> Preston carried firearms that night.  Fourcha drove to a designated area
> within the project to drop off Morrison and Preston.  Morrison goaded
> Darnell Lopez, to get out of the car.  When Lopez refused, Morrison told
> him, "Oh man, you fake."  Immediately thereafter, Morrison shot Fourcha,
> who passed out.  Fourcha regained consciousness as Morrison shot Lopez
> twice in the back of the head.  Fourcha moaned; Morrison shot him again
> and Fourcha feigned death.  As Morrison and Preston exited Fourcha's
> vehicle, Preston threw a rock of cocaine into the car, and the pair fled.
> When Fourcha was certain Morrison and Preston were gone, he drove
> Lopez to St. Claude General Hospital.  Later, Fourcha and Lopez were
> transferred to Charity Hospital.
> Detective Joseph Catalanato and Officer Tommy Mercadel were
> dispatched to investigate the shootings.  When they arrived at Charity
> Hospital, they learned that Darnell Lopez had died.  Officer Mercadel
> interviewed Harold Fourcha, who identified the assailants by their
> nicknames, "Jay Boo" (Gerald Preston) and "Prince" (Prince Morrison).

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 7, Indictment, 6/27/96; Grand Jury Minutes, 6/27/96.

(footnote omitted) Louisiana Fourth Circuit Court of Appeal Opinion, 2000-KA-1057, pages 1-2, November 14, 2001;[4] State v. Preston, 806 So.2d 181 (La. App. 4th Cir. 2001) (Table).

Morrison and Preston were tried jointly before a jury on July 6, 7, and 8, 1999, and both were found guilty of second degree murder.[5]  At a hearing held on September 23, 1999, the state trial court denied Morrison's motion for new trial based on the sufficiency of the evidence and the constitutionality of the reasonable doubt jury charge.[6]  On October 1, 1999, the state trial court sentenced Morrison and Preston each to serve life in prison without benefit of parole, probation or suspension of sentence.[7]

On appeal to the Louisiana Fourth Circuit Court of Appeal, Morrison raised three grounds for relief: (1) The state trial court erred in overruling his objections to the State's use of peremptory challenges in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79 (1986). (2) The state trial court erred in denying his motion for

---

[4]A member of my staff obtained a legible copy of the Fourth Circuit's order from the records of the Clerk of Court for the Louisiana Supreme Court, and it has been separately filed into this court's record.

[5]St. Rec. Vol. 2 of 7, Trial Minutes (4 pages), 7/6-8/99; St. Rec. Vol. 1 of 7, Jury Verdict (Morrison), 7/8/99; Jury Verdict (Preston), 7/8/99; St. Rec. Vol. 3 of 7, Trial Transcript, 7/6-8/99; St. Rec. Vol. 4 of 7, Trial Transcript (Vol. 2), 7/6-8/99.

[6]St. Rec. Vol. 1 of 7, Motion for New Trial, 7/29/99; St. Rec. Vol. 2 of 7, Minute Entry, 9/23/99.

[7]St. Rec. Vol. 2 of 7, Minute Entry, 10/1/99.  The court denied Preston's motion for new trial at the same hearing.

3

severance because of prejudicial "other crimes" evidence related to Preston. (3) The state trial court erred in allowing the prosecution to elicit hearsay testimony from Officer Mercadel, who was allowed to read from the investigative report at trial.[8]  In the same appeal, the appellate court also considered Preston's two grounds for relief, including the <u>Batson</u> issue and allegedly insufficient evidence to convict him as a principal to the crime.

On November 14, 2001, the Louisiana Fourth Circuit affirmed Morrison's and Preston's convictions, finding no merit to the claims raised on appeal.[9]  Morrison timely[10] filed a pro se writ application with the Louisiana Supreme Court in which he raised the same three grounds for relief raised by his counsel on direct appeal.[11]  On November 15, 2002, the Louisiana Supreme Court denied the writ application without reasons.[12]

Morrison's conviction became final 90 days later, on February 13, 2003, when he did not file a writ application with the United States Supreme Court.  <u>Ott v. Johnson</u>, 192

---

[8]Rec. Doc. No. 19,  4th Cir. Opinion, 2000-KA-1057, pages 1-2, 11/14/01.  The copy of the writ application was obtained form the records of the Clerk of Court for the Louisiana Supreme Court.

[9]<u>Id.</u>; <u>State v. Preston</u>, 806 So.2d at 181.

[10]La. Code Crim. P. art. 922(C); La. S. Ct. R. X§5(a).

[11]Rec. Doc. No. 19, La. S. Ct. Writ Application, 02-KH-0067, 1/10/02 (postmarked 12/6/01). The copy of the writ application and the postmark date were obtained from the records of the Clerk of Court for the Louisiana Supreme Court.

[12]<u>State v. Morrison</u>, 829 So.2d 415 (La. 2002).

F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On May 7, 2003, Morrison filed an application for post-conviction relief in the state trial court raising five grounds for relief: (1) His indictment was the result of an unconstitutional and racially discriminatory grand jury selection process. (2) Counsel gave ineffective assistance when he failed timely to file a motion to quash the indictment based on the unconstitutional grand jury selection process. (3) He was denied full appellate review because the Louisiana Fourth Circuit and the Louisiana Supreme Court found his Batson claim to be without merit. (4) The conviction was contradictory to the law and evidence and there was insufficient evidence to convict him. (5) Counsel gave ineffective assistance in that he failed to object to the denial of an impartial jury where the victim's mother had contact with a juror.

Morrison subsequently filed with the state trial court three motions to supplement his post-conviction application.[13]  In the first supplement, Morrison sought to assert

---

[13]Rec. Doc. No. 19, 4th Cir. Writ Application, 2005-K-1371, Exhibits (Motion to Supplement Post-Conviction Relief, Second Motion to Supplement Post-Conviction Relief, Third Motion to Supplement Post-Conviction Relief), 8/22/05; see also, St. Rec. Vol. 2 of 7, Letter to Clerk of Court, dated 1/7/05.

additional argument in support of his insufficient evidence claim.[14]   In the second
supplement, Morrison sought to assert two additional claims: (1) ineffective assistance
of appellate counsel for withdrawing the claim regarding missing transcripts; and
(2) ineffective assistance of trial counsel for failure to investigate the police officers and
witnesses for impeachment purposes.[15]   His third supplement attempted to raise
additional arguments supporting the claim that the grand jury selection process was
unconstitutional and in violation of state law.[16]

On July 26, 2005, the state trial court denied the application, finding that each of
his original five claims were without merit.[17]   The judgment of the state trial court does
not address the supplemental petitions.

---

[14]St. Rec. Vol. 2 of 7, Motion to Supplement Post Conviction Relief, 5/29/03; Letter to Clerk of
Court, 5/25/03; Rec. Doc. No. 19, 4th Cir. Writ Application, 2005-K-1371, Exhibits, Motion to
Supplement Post Conviction Relief, 8/22/05.

[15]Rec. Doc. No. 19, 4th Cir. Writ Application, 2005-K-1371, Exhibits, Second Motion to
Supplement Post-Conviction Relief, , 8/22/05; see also, St. Rec. Vol. 2 of 7, Letter to Clerk of Court,
dated 1/7/05.

[16]St. Rec. Vol. 2 of 7, Partial Copy of Third Motion to Supplement Post-Conviction Relief, dated
7/19/04; Letter to Clerk of Court, 9/14/04; Rec. Doc. No. 19, 4th Cir. Writ Application, 2005-K-1371,
Exhibits, Third Motion to Supplement Post-Conviction Relief, 8/22/05.

[17]St. Rec. Vol. 2 of 7, Judgment on Post-Conviction Relief Application, signed 7/21/05, filed
7/26/05.

Morrison filed a writ application with the Louisiana Fourth Circuit on August 22, 2005, seeking review of the denial of his claims.[18]  He also sought review of the arguments and claims raised in the three supplemental petitions, which he attached to the writ application.[19]  On February 7, 2006, the appellate court denied the application, indicating that it had reviewed "his application for post-conviction relief and the three supplements thereto. . .."[20]

Morrison then sought timely review in the Louisiana Supreme Court on April 24, 2006, raising his original five post-conviction claims and his second supplemental claim alleging ineffective assistance of counsel for failure to investigate the police and other witnesses for impeachment purposes.[21]  The application was denied without reasons on October 13, 2006.[22]

---

[18]Rec. Doc. No. 19, 4th Cir. Writ Application, 2005-K-1371, 8/22/05.  A member of my staff obtained a copy of this writ application from the clerk of court for the Louisiana Fourth Circuit.

[19]Id.

[20]St. Rec. Vol. 7 of 7, 4th Cir. Order, 2005-K-1371, 2/7/06.

[21]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 06-KH-925, 4/24/06 (postmarked 2/17/06); La. Code Crim. P. art. 922(C); La. S. Ct. R. X§5(a).

[22]State ex rel. Morrison v. State, 939 So.2d 361 (La. 2006); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2006-KH-0925, 10/13/06.

II.     <u>FEDERAL HABEAS PETITION</u>

On November 27, 2006, Morrison filed a petition for federal habeas corpus relief in which he alleges the following eight grounds for relief:  (1) His right to equal protection was denied when the state trial court denied his <u>Batson</u> challenge. (2) His indictment was the result of an unconstitutional and racially discriminatory grand jury selection process. (3) Counsel gave ineffective assistance when he failed timely to file a motion to quash the indictment based on the unconstitutional grand jury selection process. (4) Trial counsel provided ineffective assistance for failure to investigate the police officers and witnesses for impeachment purposes. (5) There was insufficient evidence to convict him. (6) Counsel gave ineffective assistance when he failed to object to the denial of an impartial jury because the victim's mother had contact with a juror. (7) The state trial court erred in denying the motion for severance because of prejudicial "other crimes" evidence related to Preston. (8) The state trial court erred in allowing the prosecution to elicit hearsay testimony from Officer Mercadel, who was allowed to read from the investigative report at trial.[23]

The State filed a response in opposition to the petition, alleging that Morrison's fourth claim, raising ineffective assistance of counsel for failure to investigate, was not

---

[23]Rec. Doc. No. 1.

exhausted.[24]  The State also argues that the claim should be barred from federal review as procedurally defaulted because Morrison was too late to exhaust through the state courts.  The State also argues that the remaining claims are without merit.

Morrison filed a reply to the State's response in which he alleges that he raised the fourth claim before the state trial court in a supplemental petition which was ignored by that court.[25]  He further argues the merits of his claims.

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[26] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Morrison's petition, which, for reasons discussed below, is deemed filed in this federal court on October 17, 2006.[27]

_____

[24]Rec. Doc. No. 17.

[25]Rec. Doc. No. 18.

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

My review of the record reflects that Morrison's petition is timely filed.  I also find that the State's defense of procedural default based on alleged failure to exhaust is without merit and must be rejected.

IV.   EXHAUSTION OF STATE COURT REMEDIES

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted

---

acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Morrison's petition was filed by the clerk of court on November 27, 2006.  Morrison dated his signature on the petition on October 17, 2006.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

as to <u>all</u> of the federal court claims." <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the <u>highest</u> state court." <u>Id.</u> (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>accord</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." <u>Whitehead</u>, 157 F.3d at 387 (citing <u>Picard</u>, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents <u>new legal theories</u> or <u>new factual claims</u> in his federal application." (emphasis added) <u>Id.</u> (citing <u>Nobles</u>, 127 F.3d at 420). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court. <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief to find the claim).

The State argues that Morrison's fourth claim is unexhausted because he failed to raise the claim at each level of the state court system and it is now in procedural default because it is too late under Louisiana law to do so. The State contends that Morrison raised the claims for the first time in the Louisiana Supreme Court and has therefore denied the state courts one full review of his claim.

Contrary to the State's suggestion, the state court record contains some evidence that Morrison submitted this ineffective assistance of counsel claim to the state trial court and the Louisiana Fourth Circuit in a supplemental pleading. As noted above, Morrison submitted three motions to the state trial court attempting to supplement his application for post-conviction relief.

The state court record contains references to these motions and, in some instances, partial copies of the motions with cover letters submitted by Morrison.[28] Furthermore, copies of these supplemental pleadings were attached to Morrison's later-filed Louisiana Fourth Circuit writ application, Case No. 2005-K-1371.

Review of those pleadings, as outlined above, reflects that Morrison included in his Second Motion to Supplement Post-Conviction Relief the claim that his counsel was

---

[28]St. Rec. Vol. 2 of 7, Letter to Clerk of Court, dated 1/7/05; Motion to Supplement Post Conviction Relief, 5/29/03; Letter to Clerk of Court, 5/25/03; Partial Copy of Third Motion to Supplement Post-Conviction Relief, dated 7/19/04; Letter to Clerk of Court, 9/14/04; Rec. Doc. No. 19, 4th Cir. Writ Application, 2005-K-1371, Exhibits (Motion to Supplement Post-Conviction Relief, Second Motion to Supplement Post-Conviction Relief, Third Motion to Supplement Post-Conviction Relief.)

ineffective for failure to investigate the officers and witnesses for impeachment purposes.[29]  Morrison indicates that this second motion was submitted to the state trial court on December 10, 2003.  Attached to his traverse, Morrison submitted a copy of an "Inmate Request for Legal/Indigent Mail," which indicates that he attempted to mail a pleading to the Orleans Parish Criminal District Court on December 10, 2003.[30]

In addition, the claims in his second supplement were eventually reviewed by the Louisiana Fourth Circuit, after Morrison argued to that court that the state trial court had ignored his three supplemental pleadings.[31]

Morrison has at least presented his claims to each of the state courts and afforded each court the opportunity to consider the claims.  The State's defense of procedural default through failure to exhaust must be rejected in these circumstances.

V.   MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

---

[29]Rec. Doc. No. 19, 4th Cir. Writ Application, 2005-K-1371, Exhibits, Second Motion to Supplement Post-Conviction Relief, 8/22/05; see also, St. Rec. Vol. 2 of 7, Letter to Clerk of Court, dated 1/7/05.

[30]Rec. Doc. No. 18, p. 25, Exhibit 1.

[31]St. Rec. Vol. 7 of 7, 4th Cir. Order, 2005-K-1371, 2/7/06.

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

A.     BATSON VIOLATION (CLAIM NO. ONE)

Morrison alleges that the prosecution used 22 of its available 24 peremptory

challenges to exclude African-Americans from the jury during voir dire and did so solely

because of their race.  He contends that the state trial court erred in overruling his Batson

challenges without requiring the prosecution to provide race neutral reasons for using its

peremptory challenges.

The record reflects that Morrison's counsel raised a <u>Batson</u> challenge on three occasions during jury selection.  The state trial court overruled each challenge and found that the prosecutor properly had stated neutral reasons for using the peremptory challenges after the first panel and that there was nothing discriminatory in the use of the challenges.

Morrison's appellate counsel also raised the <u>Batson</u> challenge on appeal.  The Louisiana Fourth Circuit denied the claim finding that, under the standards set forth in <u>Batson</u> and <u>Purkett v. Elem</u>, 514 U.S. 765 (1995), the State had offered race neutral reasons for the peremptory challenges to the potential jurors.  The court further noted that 11 of the 12 jurors seated were African-American.  This was the last reasoned opinion on the issue because the Louisiana Supreme Court denied the subsequent writ application without reasons.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).

The Louisiana appellate court relied on <u>Batson</u> and its progeny, which is the appropriate Supreme Court precedent to address a claim that a peremptory challenge may not be based on race.  <u>See</u> <u>Moody v. Quarterman</u>, 476 F.3d 260, 266-67 (5th Cir. 2007). The United States Supreme Court recently revisited the appropriate analysis to be used in addressing a <u>Batson</u> challenge:

> A defendant's <u>Batson</u> challenge to a peremptory strike requires a three-step inquiry.  First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712.  Second,

> if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Id., at 97-98, 106 S.Ct. 1712. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L. Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, supra, at 98, 106 S.Ct. 1712; Miller-El v. Dretke, 545 U.S. [231, 251-52], 125 S.Ct. 2317, 2331-2332, 162 L. Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, supra, at 768, 115 S.Ct. 1769.

Rice v. Collins, 546 U.S. 333, 338 (2006).

In determining whether purposeful discrimination has occurred, the court may consider a number of factors, including (1) the percentage of African-American panelists who were challenged by the prosecutor with a peremptory strike; (2) comparison of the African-American panelists who were struck with the white panelists allowed to serve; (3) the prosecutor's use of procedural mechanisms to move African-Americans to the back of the panel, where they are less likely to be selected; (4) evidence of a contrast between questions posed to black and non-black panelists where such contrast indicates intent to load questions to make a case to exclude the African-American panelists; (5) evidence of a systematic policy or practice within the prosecutor's office of excluding minority jurors. United States v. Nelson, 450 F.3d 1201, 1207-08 (10th Cir. 2006) (citing Miller-El v. Dretke, 545 U.S. 231 (2005)).

A Batson issue is a question of fact.  Hernandez v. New York, 500 U.S. 352, 364, 369 (1991).  The state court's answer to "'the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal,'" because such a finding largely turns on the court's "evaluation of the prosecutor's credibility." United States v. Sneed, 34 F.3d 1570, 1579 (10th Cir.1994) (quoting Hernandez, 500 U.S. at 364); accord Rice, 126 S.Ct. at 338-342; Moody, 476 F.3d at 267 (citing Purkett, 514 U.S. at 768).  "Thus we presume [the state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.' § 2254(e)(1)."  Miller-El, 545 U.S. at 240; Moody, 476 F.3d at 267.

The Miller-El court also emphasized that, pursuant to Section 2254(e), state court factual findings must be given the presumption of correctness unless the federal court finds that "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary."  Miller-El, 537 U.S. at 341.  In such a case, this court's focus must be on the third step of the Batson test if the factual determination was unreasonable by clear and convincing evidence.  Rice, 546 U.S. at 342;  Moody, 476 F.3d at 266.

In the instant case, the record does not clearly reflect the race of the potential jurors on the voir dire panel list, and none of the jurors were questioned about their race

during voir dire.[32]  The only indication that the vast majority of the jurors were African-American came during discussions of the Batson challenges made by Morrison's counsel.[33]

The jury voir dire was conducted in four groups of 20 panelists.  At the end of the selection of the first panel, the State used seven of its 24 peremptory challenges to exclude seven panelists described as African-Americans.  The state trial court required that the prosecutor provide reasons for the peremptory challenges.

The prosecutor stated that he excluded juror No. 2 because she nodded in agreement when another panelist quoted the Bible.  He also felt that she was aligned with defense counsel's remarks.  He excluded juror No. 3 because she was not cooperative and he did not have a good connection with her.  He also believed that she did not understand the basic principles that had been discussed and made no eye contact with him.  He indicated that he excused juror No. 8 because he slept through voir dire.  Counsel had previously made a motion to excuse this juror for cause, but it was denied by the court. The prosecutor also felt that juror No. 11 was in line with the defense and would not make a good juror for the State.  He further excused jurors Nos. 15 and 18 because they were both age 22, similar to the age of the defendants.  Finally, he stated that he excused

---

[32]St. Rec. Vol. 1 of 7, List of Petit Jurors; St. Rec. Vol. 3 of 7, Trial Transcript, 7/6/99.

[33]St. Rec. Vol. 3 of 7, Trial Transcript, pp. 134, 211 and 267, 7/6/99.

juror No. 20 because that juror had previously served on a jury in a simple burglary case and voted not guilty.[34]

The state trial court found no pattern of discrimination and accepted the prosecutor's non-racial or neutral reasons in support of the peremptory challenges.

After the second round of questioning, the State excused six panelists by peremptory challenges.[35]  The State used six more challenges in the third round.  After each round, Morrison's counsel again urged his Batson challenge.  In all instances, the state trial court rejected defense counsel's suggestion of a pattern of discrimination, the first step of a Batson review.[36]

In Batson, the Supreme Court set forth three basic considerations for a trial court to determine whether a defendant has met the first step, the prima facie showing, of the three-step procedure concerning the question of whether peremptory challenges have been used in an unconstitutionally discriminatory manner:

> The standards for assessing a prima facie case in the context of discriminatory selection of the venire have been fully articulated since Swain [v. Alabama, 380 U.S. 202, 205 (1965)].  See Castaneda v. Partida, supra, 430 U.S., at 494-495, 97 S.Ct., at 1280; Washington v. Davis, 426 U.S., at 241-242, 96 S.Ct., at 2048-2049; Alexander v. Louisiana, supra,

---

[34]Id. at pp. 129-30.

[35]One of these jurors, No. 29, Wanda Davis, was excluded by the State's "back-striking."  Id. at pp. 216-17.  The record does not indicate that the defense objected to this strike.

[36]Id. at pp. 136, 211.

405 U.S., at 629-631, 92 S.Ct., at 1224-1226.  These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, 430 U.S., at 494, 97 S.Ct., at 1280, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Avery v. Georgia, 345 U.S., at 562, 73 S.Ct., at 892. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.  This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

Batson, 476 U.S. at 96-97; Miller-El, 545 U.S. at 240.

The record indicates that the petitioner, Morrison, was African-American and that the prosecution used peremptory challenges to exclude African-Americans from the jury. These factors confirm the first two parts of the prima facie showing.  However, the state trial court determined that the circumstances of the case did not raise an inference that the prosecution used the peremptory challenges to exclude African-Americans because of their race.  As will be discussed, the record does not contain any circumstance that would undermine this finding.

When addressing a Batson claim on habeas corpus review, unlike direct appellate review, the factual findings made by a state trial court during a Batson challenge are

entitled to deference unless the petitioner demonstrates that the state trial court's findings of fact were "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>Miller-El</u>, 545 U.S. at 240.  The decision in <u>Batson</u> also provides another layer of deference to the factual findings of the trial court in determining whether a defendant has made a prima facie showing:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances.  For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. <u>We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors</u>.

(emphasis added) <u>Batson</u>, 476 U.S. at 97.

In this case, the state trial court made an assessment of the circumstances and determined that the State had not used its peremptory challenges inappropriately.  After Morrison's first <u>Batson</u> challenge, the state trial court considered the non-racial reasons proffered by the State for excluding African-American jurors from the first panel.  The court was involved in and heard the questions asked by the prosecution and defense during voir dire.  When the defense re-urged the <u>Batson</u> challenge, the court resolved that

the large majority percentage of African-Americans among the jurors who came from the jury pool accounted for the number of African-Americans excluded by peremptory challenge and that there was no inference of a pattern of discrimination:

> BY THE COURT:
> I've got to say this, and be sure that the record is perfected, if I took and looked at exactly the composition of the jury that's brought up here I would say that it's in excess of 75% black citizens.  That's a fact of life.  So I don't know how that applies unless you want to go to picking up other parishes to make the racial balance.[37]

The court reiterated this finding after receiving additional comments from counsel regarding the peremptory challenges:

> BY THE COURT:
> Alright, we're dealing with a murder case so you put this down and perfect it and I don't want to make light of any of these things but it would be impossible to pick a panel if we excluded every black person here because it's over 75% African-American and it may be even higher than that.[38]

Based on the circumstances of the case, the court resolved that the peremptory challenges were a reflection of mathematical fact, considering the Orleans Parish pool of potential jurors, and not a pattern of discrimination.  The state trial court's conclusion was made after it had heard and considered the State's race-neutral reasons for the use of its peremptory challenges in the first round of voir dire, which the court found to be

---

[37]Id. at p. 211.

[38]Id. at pp. 212-13.

valid.  Thereafter, the state trial court upon further consideration of the voir dire process made the finding that there was no showing of a pattern of discrimination.

As outlined above, the court stated that the <u>Batson</u> challenge was misplaced and overused by defense counsel.  The court determined that more than 75% of the panelists called from the jury pool were black.[39]  The record indicates that by the end of the third round of voir dire, only one white panelist had been called for questioning and only one white panelist remained to be questioned.[40]  The court resolved that, given the overwhelming African-American racial composition of the venire, the State would be unable to strike any juror if it was not able to strike black jurors.[41]

The record also reflects that the State did not question the voir dire panel or make statements in a manner that would suggest any inference of discriminatory purpose.  The trial court presented the majority of the voir dire questions to the second and third panels "to cut down on the repetitive nature of the same questions" and to "shorten the process a little bit."[42]  The court's questions addressed whether the parties had knowledge of the defendants, the victim, the lawyers, or the witnesses and whether they had a relationship with law enforcement personnel.  The court asked about prior jury service.  The court

---

[39]<u>Id</u>. at p. 211.

[40]<u>Id</u>., at p. 212-267.

[41]<u>Id</u>. at pp. 211, 212-13.

[42]<u>Id</u>. at p. 148-49.

questioned the jurors about their ability to consider imposing the death penalty or the alternative sentence of life.

Following the court's questioning, the prosecution addressed the panel. The first questions were directed to the panelists who opposed the death penalty during questioning by the court.[43] The prosecution then questioned the entire panel about their understanding of the concept of reasonable doubt, the meaning of "principal" to a crime, and the irrelevance of the victim's past in a murder case. The prosecution also questioned whether any of the jurors, or a relative, had been the victim of a crime.

During the third round of voir dire, the court again asked the same questions it had posed in the prior rounds. The court also questioned this panel about their understanding of reasonable doubt and when a person is considered a principal to a crime.

The prosecution's first questions in this round were directed to the two panelists who indicated to the court that they believed that the death penalty always should be imposed for murder.[44] The prosecution also questioned the two panelists who felt that the defendant should be required to testify.[45] He then questioned the panel about the irrelevance of the victim's past in a murder case.

---

[43]Id. at pp. 188-89.

[44]Id. at pp. 244-50.

[45]Id. at pp. 250-51.

Nothing in the State's questions or statements during voir dire creates any inference of discrimination to support a prima facie showing under <u>Batson</u>.  There was no basis to shift the burden to the State to present race neutral reasons for the use of the peremptory challenges.  <u>Soria v. Johnson</u>, 207 F.3d 232, 238-39 (5th Cir. 2000); <u>Thompson v. Cain</u>, 161 F.3d 802 (5th Cir. 1998).

In <u>Soria</u>, the United States Fifth Circuit Court of Appeals held that the state court's determination regarding the defendant's failure to make a prima facie showing was a factual finding entitled to deference under the AEDPA.  <u>Soria</u>, 207 F.3d at 238; <u>Thompson</u>, 161 F.3d at 210-11.  The Fifth Circuit reviewed the record and determined that the state trial court had indicated that it saw no pattern or systematic exclusion of jurors and the finding comported with the Supreme Court's requirements under <u>Batson</u>. <u>Soria</u>, 207 F.3d at 238.

In <u>Soria</u>, the defendant/habeas petitioner argued to the Fifth Circuit that "'by refusing to put the prosecutor to his burden under <u>Batson</u>, the trial judge denied petitioner the very evidence which would be used to establish purposeful discrimination.'"  <u>Soria</u>, 207 F.3d at 238.  In addressing this argument, the Fifth Circuit stated:

> This argument indicates a fundamental misunderstanding of the burden-shifting framework crafted in <u>Batson</u>.  "The 'shifting burden' described in the Batson framework is one of production only."  <u>United States v. Bentley-Smith</u>, 2 F.3d 1368, 1373 (5th Cir.1993).  The party asserting the claim of purposeful discrimination always shoulders the ultimate burden of persuasion.  <u>See</u> <u>id</u>.  More important, <u>Batson</u> makes

clear that a petitioner must establish a prima facie case before a prosecutor is required to come forward with a neutral explanation for the challenges. 476 U.S. at 96-97, 106 S.Ct. at 1723. Once a prima facie case is established, the reason proffered by the prosecutor will be deemed race neutral unless a discriminatory intent is inherent in such explanation. Bentley-Smith, 2 F.3d at 1373.

Soria does not now point to any evidence establishing a prima facie case of purposeful discrimination during voir dire other than the fact that two Hispanics were peremptorily challenged. Although a peremptory challenge based on the race of even one minority venire member constitutes a violation of Batson, "a defendant must prove discrimination by more than the sole fact that the minority venire-person was struck by peremptory challenge." Branch, 989 F.2d at 755. In light of the confidence placed in trial judges to make this determination, we cannot conclude that Soria has overcome the presumption of correctness afforded the state court's finding. Soria's failure to rebut the state court's factual finding that a prima facie case of purposeful discrimination was not made effectively precludes him from making a substantial showing of the denial of a federal right.

Soria, 207 F.3d 239.

Similarly, in Morrison's case, the state trial court indicated that it did not see a basis for defense counsel's Batson challenge because the overwhelming majority of the panelists were African-American. The overwhelming majority of African-Americans who ultimately served on the selected jury corroborates the trial judge's finding. Thus, the court concluded that the use of challenges against blacks could not be avoided. As a result of this finding, the court did not require a response on the second and third rounds of the voir dire.

The state trial court resolved that the defense had failed to carry its initial burden of showing that the prosecutor made challenges based on race. The burden under Batson,

therefore, never shifted to the State and there was no error in the state trial court's failure to require the State to present race neutral reasons in the second and third rounds of the voir dire.

Instead, the state trial court's factual finding that Morrison had not made a prima facie showing of discrimination is presumed correct and is supported by the record.[46] Morrison has not established that there was any inference of a pattern of discrimination or that the court's reasons for overruling the challenge were not supported by the record.

Morrison has not offered to this court any evidence, much less clear and convincing evidence, to establish that the findings by the state trial court were unreasonable, or not supported by the record, in such a manner as to overcome the presumption of correctness under the AEDPA. Miller-El, 537 U.S. at 240, 251-52. This presumption differs from the more stringent clearly erroneous standard occasioned on direct review of a Batson challenge like that addressed in cases like United States v. Huey, 76 F.3d 638 (5th Cir. 1996). As outlined above, there were no race related questions posed by the prosecution to the voir dire panel. The exclusion of black jurors was a mathematical certainty and no inference of a pattern or discriminatory purpose can be found in the record to support a prima facie showing. The state courts' denial of relief

---

[46]Id. at pp. 212-13.

on this claim was not contrary to or an unreasonable application of <u>Batson</u>.  Morrison is
not entitled to relief on this claim.

B.      <u>GRAND JURY SELECTION PROCESS (CLAIM NO. 2)</u>

Morrison alleges that his indictment was issued by a grand jury that was
unconstitutionally empaneled as the result of a racially discriminatory selection process.
He first raised this claim in his application for post-conviction relief.  The state trial court
denied relief, citing without explanation <u>State v. Dilosa</u>, 848 So.2d 546 (La. 2003).  The
Louisiana Fourth Circuit and the Louisiana Supreme Court denied relief on Morrison's
subsequent writ applications without additional reasons.

In <u>Dilosa</u>, the Louisiana Supreme Court determined that La. C. Crim. P. art.
413(C), which sets forth the process for selection of grand juries in Orleans Parish, failed
to provide the procedural protections required by the Louisiana Constitution.  <u>Id</u>. at 546.
Morrison's claim that Article 413(C) violated the state constitution is not a ground for
federal habeas corpus relief.  <u>See</u> <u>Parker v. Cain</u>, 445 F. Supp.2d at 697 n.23; <u>Varnado
v. Cain</u>, 2004 WL 2984804 at *5 (E.D. La. Dec. 21, 2004) (Duval, J.).

Morrison's claim is admittedly based in part on <u>Dilosa</u>, 848 So.2d at 546, in which
the Louisiana Supreme Court, not the United States Supreme Court, addressed Louisiana
laws governing the selection of the grand jury venire and foreperson in Orleans Parish
and held that it violated La. Const. art. III, § 12(A).  The fact that those provisions

violated the state constitution is of no moment in a federal proceeding.  Parker, 445 F.

Supp.2d at 697.

Morrison suggests that he is entitled to federal review under the standards set forth

in Campbell v. Louisiana, 523 U.S. 392 (1998).  He is not.  In Campbell, the Supreme

Court addressed a Louisiana statute which was not applicable to Orleans Parish.  Prior

to Campbell, La. Code Crim. P. art. 413(B) provided:

> In parishes other than Orleans, the court shall select one person from the
> grand jury venire to serve as foreman of the grand jury.  The sheriff shall
> draw indiscriminately and by lot from the envelope containing the
> remaining names on the grand jury venire a sufficient number of names to
> complete the grand jury.

La. Code Crim. Proc. art. 413(B) (emphasis added) (prior to amendment by Acts 1999,

No. 984, § 1, approved July 9, 1999).  Thus, under the pre-July 1999 law in Louisiana,

> the judge selects the foreperson from the grand jury venire before the
> remaining members of the grand jury have been chosen by lot. . . .  As a
> result, when the Louisiana judge selected the foreperson, he also selected
> one member of the grand jury outside of the drawing system used to
> compose the balance of that body.  These considerations require us to treat
> the case as one alleging discriminatory selection of grand jurors.

Campbell, 523 U.S. at 396.  The Louisiana legislature amended Article 413(B) in July

1999 to delete the emphasized language in the quotation above and to provide instead for

random selection of the foreperson from among the already impaneled grand jury members.  La. Code Crim. Proc. art. 413(B) (as amended by Acts 1999, No. 984, § 1).[47]

In this case, Morrison concedes that the ruling in Campbell is distinguishable from his case and that it addressed a statute which was not the basis of his grand jury selection process in Orleans Parish under La. Code Crim. P. art. 413(C).  In fact, the United States Supreme Court has not addressed the issue brought under Dilosa with regard to Louisiana laws applicable to Orleans Parish grand jury selection.

Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1982).  Because the constitutional rights addressed in Dilosa were state constitutional rights, federal habeas corpus relief is not available to Morrison.  Davis v. Jones, 2006 WL 1540114 at *2 n.11 (E.D. La. May 31, 2006) (unpub.) (Berrigan, C.J.); Varnado, 2004 WL 2984804 at *5.

Therefore, Morrison is not entitled to federal habeas corpus relief.  The state courts' denial of relief on the claim was not contrary to, or an unreasonable application of, United States Supreme Court law.

---

[47]The 1999 amendment applied to all parishes other than Orleans Parish. The article was amended again in 2001 to delete the exceptions for Orleans Parish. Acts 2001, No. 281, § 1.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 3, 4 AND 6)

Morrison alleges that his trial counsel was unconstitutionally ineffective in several ways.  He claims that counsel failed timely to file a motion to quash the grand jury indictment based on the discriminatory selection process.  He also alleges that counsel failed to investigate the police officers and state witnesses to obtain possible impeachment information.  Morrison further claims that his counsel failed to request a hearing to investigate whether other jurors overheard a conversation between the victim's mother and juror No. 52, Bernadette Jackson.

Morrison raised this claim in his application for post-conviction relief.  The state trial court found that, with respect to the failure to file the motion to quash, Morrison failed to meet the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984).  The court also resolved that the record did not support Morrison's claim that counsel's performance denied him a fair trial.  The court did not address the failure to investigate claim, which was raised in Morrison's second motion to supplement.

The Louisiana Fourth Circuit reviewed all of the claims and found that Morrison had failed to establish that he was entitled to relief or that there was an error in the trial court's ruling.  The Louisiana Supreme Court denied the subsequent writ application without reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the Supreme Court in Strickland, 466 U.S. at 668, which the state trial court cited and applied. In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under

33

Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical

decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was unreasonable.  Strickland, 466 U.S. at 689.

1.   FAILURE TO FILE A MOTION TO QUASH

Morrison contends that his counsel was ineffective for failing to file a motion to quash the indictment based on racial discrimination in the selection process.  He argues that counsel had a duty to challenge the grand jury foreperson's selection through a motion to quash pursuant to Louisiana law.  The record indicates, however, that at the time of Morrison's prosecution, counsel's failure to file a motion to quash the grand jury indictment was reasonable and not unconstitutionally deficient.

Under Louisiana law, a motion to quash a grand jury indictment may be filed if, among other things, "the manner of selection of . . . the grand jury venire, or the grand

jury was illegal." La. Code Crim. P. art. 533.[48]  In this case, Morrison's counsel filed a motion to quash the indictment based on issues arising from the death penalty aspect of the first degree murder charge.[49]  The motion did not address the type of discrimination now being alleged by Morrison.

Nevertheless, federal courts have long recognized that the filing of a motion to quash of the type addressed by Morrison is generally a matter of professional judgment left to the discretion of counsel.  Williams v. Beto, 354 F.2d 698, 703 (5th Cir. 1965) (citing Michel v. Louisiana, 350 U.S. 91 (1955)); accord United States v. Lewis, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986).  In Michel, the United States Supreme Court held that the failure of counsel to move to quash the indictment on grounds that the grand jury was unconstitutionally impaneled because of the historical exclusion of African-Americans from the grand jury was not deficient performance per se and was within the

---

[48]La. Code Crim. P. art. 533 provides:
A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
(1)    The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.
(2)    An individual grand juror was not qualified under Article 401.
(3)    A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.
(4)    Less than nine grand jurors were present when the indictment was found.
(5)    The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

[49]St. Rec. Vol. 1 of 7, Motion to Quash the Indictment, undated.

range of sound trial strategy, given the facts of the case.  <u>Michel</u>, 350 U.S. at 100.  The same is true in this case.

As discussed previously, the United States Supreme Court has not declared the Orleans Parish system as it existed under La. Code Crim. P. art. 413(C) to be unconstitutional as it did with Article 413(B) addressed to other parishes.  There was no apparent basis for counsel to challenge the grand jury selection process at the time.  In the instant case, the decision of Morrison's counsel not to challenge alleged discrimination against African-Americans in the grand jury foreperson selection process was not outside the reasonable discretion afforded counsel.

Therefore, the state courts' denial of relief was not contrary to, or an unreasonable application of <u>Strickland</u>.  Morrison is not entitled to relief on this claim.

2.    <u>FAILURE TO INVESTIGATE WITNESSES</u>

a.    <u>Officer Wellington Beaulieu</u>

Morrison alleges that he told his counsel that Officer Wellington Beaulieu, who interviewed the victim, Harold Fourcha, often harassed him and Preston while the officer was assigned to patrol the Desire Housing Project.  He complains that his counsel did not question Beaulieu about this.[50]

---

[50]Unfortunately, the copy of the transcript in the record provided to the court does not contain the pages during which Morrison's counsel questioned Beaulieu at trial. However, the record is otherwise sufficient to address this issue.

The transcript reflects that the State called Officer Beaulieu to testify regarding the identification made by Fourcha.[51]  Beaulieu also admitted that he already knew both Preston and Morrison.  He testified that he showed Morrison's picture to Fourcha after Fourcha identified him by name.  He also testified that he did not write the police report and could not answer questions about it.

Morrison has not established that he would have benefitted from counsel's probing into his relationship with Beaulieu.  The tone of his relationship with Beaulieu played no apparent role in the statements and identification made by Fourcha.  Probing into Morrison's prior encounters with Beaulieu would have been suggestive to the jury that Morrison had prior run-ins with the law, a subject usually avoided by defense counsel when possible.  Counsel could not have been deficient in avoiding the presentation of potentially prejudicial or suggestive information about Morrison's prior encounters with Officer Beaulieu.

Morrison also argues that if counsel would have investigated Officer Beaulieu, he could have discovered that Beaulieu was trafficking stolen vehicles between 1996 and 1999. Morrison claims that, well after his trial, he discovered an article in the newspaper which disclosed Beaulieu's guilty plea to the charge in this United States District Court.

---

[51]St. Rec. Vol. 4 of 7, Trial Transcript Vol. 2, pp. 185-201, 7/6-8/99.

The records of this court in fact reflect that Wellington Beaulieu was indicted by a federal grand jury on February 15, 2002, and charged with conspiracy to transport stolen vehicles in interstate commerce.[52]  Beaulieu entered a plea of guilty to that charge in Crim. Action No. 02-0051"A" in this court on April 9, 2002, and was later sentenced on November 14, 2002.[53]

Morrison is apparently suggesting that if his counsel had investigated Beaulieu before the 1999 trial, he could have learned that Beaulieu was engaged in the criminal activity with which he was charged years later.  Morrison readily admits that the information regarding Beaulieu's criminal activity arose well after his trial.  Morrison could not have reasonably expected his counsel to have conducted a criminal investigation into Beaulieu's personal activities or to have been clairvoyant regarding the indictment returned some three years after the trial.  Morrison's suggestion is specious and fails to demonstrate a deficiency in counsel's performance.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of Strickland.  Morrison is not entitled to relief on this claim.

---

[52]Crim. Action No. 02-0051"A," Rec. Doc. No. 1.

[53]Id. Rec. Doc. Nos. 15, 38.

b.    Harold Fourcha, Jr.[54]

Morrison suggests that counsel admitted on the record that he did not investigate or prepare to cross-examine the surviving victim, Harold Fourcha Jr., at trial.  Counsel made no such statement on the record and Morrison presents nothing to support his suggestion that counsel made the remark at any time.

When the state tendered Fourcha to the defense for cross-examination, Morrison's counsel requested that the judge poll the jury members regarding their desire either to continue with the trial after they ate their evening meal or to return the next morning:[55]

> BY MR. ZIBILICH:
> All right.
> Judge, let the record reflect that I had requested that the Court ask the jury after they finish eating whether they want to come back tonight and move on or if they want to retire for the night and come back tomorrow as I anticipate my cross examination to be very extensive and take a rather long period of time and that coupled with the fact that the jurors have been here for approximately eleven hours already.

The state trial court commented that it was not the jury's decision and instructed that trial would continue.  Counsel made the following comment:

> BY MR. ZIBILICH:
> All right.
> Just please note our objection, Your Honor.
> I would ask for an overnight recess to prepare my cross examination of this witness as he is the most critical witness in the case.

---

[54]Fourcha is sometimes spelled "Fusha" in the state court record.

[55]St. Rec. Vol. 4 of 7, Trial Transcript Vol. 2, p. 95, 7/6-8/99.

Counsel apparently sought the recess, not because he was unprepared but because he was aware of the length of time he needed to examine Fourcha thoroughly.  The record also demonstrates that counsel in fact thoroughly questioned Fourcha about his statements made to the prosecutor and investigators about the case.[56] He also delved into Fourcha's prior drug conviction.  In a detailed manner, counsel led Fourcha through every minute of the evening he spent with the Morrison, Preston and Lopez, including details about places, people, clothing and food.  He questioned him about the injuries he received, where the blood flowed, how the car doors closed.  A reading of the transcript reflects that counsel was fully prepared to question Fourcha about every aspect of the entire evening and was in fact completely prepared for trial.

The record does not support Morrison's claim that counsel's performance was deficient. On the contrary, the record supports the opposite conclusion. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Strickland.  Morrison is not entitled to relief on this claim.

c.    Two Unidentified Women

Morrison also claims that there were two young women in the courtroom at trial that counsel refused to call to testify.  He claims that they would have testified that Fourcha and Lopez were alone in the car when they parked in the driveway at the

---

[56]Id., at pp. 97-168.

41

housing project.  He claims that this would have challenged Fourcha's representation that the four men were together in the car.

As a general rule, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)).  Thus, where the only evidence of an uncalled witness's testimony comes from the defendant, federal courts are reluctant to find ineffective assistance on habeas review.  Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir.1985).

Morrison has provided absolutely no identification of the two female witnesses whom he claims were available to testify at trial, nor has he submitted anything to support the substance of their expected testimony.  Moreover, even if the two women were to testify that they saw Fourcha and Lopez in a car alone, this would not conflict with Fourcha's testimony.

On direct examination, Fourcha testified that, after leaving a restaurant, he and Lopez drove alone in his car to a driveway in the housing project where they were joined by Preston and Morrison, who drove up in a different car.[57]  The fact that two women may have seen Fourcha and Lopez alone in the car would be consistent with this.

---

[57]Id. at p. 55-56.

Morrison has failed to allege that counsel was deficient for failing to call the unidentified women or that Morrison was prejudiced by the unavailability of their anticipated testimony. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of <u>Strickland</u>. Morrison is not entitled to relief on this claim.

3.   <u>FAILURE TO REQUEST A HEARING ON JUROR COMMUNICATION</u>

Morrison alleges that his counsel was ineffective for failure to investigate whether other members of the voir dire panel overheard discussions between the mother of the victim and juror No. 52, Bernadette Jackson. The record reflects that, during the third round of voir dire questioning, Jackson asked the court if she could approach the bench.[58] She advised the court that she had a conversation with the mother of the victim, whom she already knew, and she told her about the case. Jackson told the court that she would not make a good juror because of the information she had. When questioned by Morrison's counsel, she stated that she was there by herself. She also indicated that some people were "sitting on that side" and three deputies were nearby.

Morrison's counsel questioned whether anyone else was there or overheard the conversation.[59] Preston's counsel suggested someone named Robert Smith advised him

---

[58]<u>Id</u>., at pp. 234-236.

[59]<u>Id</u>. at pp. 237-38.

that Lopez's mother may have spoken to a number of people.  The court instructed that counsel could discuss the issue at the end of questioning of the panel before them if there was a concern that someone else had to be excluded.  Preston's attorney indicated that Smith would be able to advise him and the court whether any of the other jury panelists were seen speaking with the victim's mother.

Counsel made no further statements on the record which would indicate that Smith identified a panelist.  In addition, the transcript reflects that no other juror came forward to say that they knew or had spoken with Lopez's mother or overheard the conversation.  Of the panel in the courtroom at the time, 18 of the 20 people called, including Jackson, were excused for cause or by peremptory exception.  No one revisited the Jackson conversation.

Morrison has not shown how counsel was deficient for failing to pursue the matter further.  Nothing surfaced during voir dire to lead counsel or the court to believe that Lopez's mother had spoken with anyone but Jackson.  There is no indication of any prejudice since Jackson's comments were made at the bench and could not have influenced the other jurors.  Jackson was also excused for cause by the court.

Without an indication that counsel's decision not to pursue the matter further was deficient or prejudicial, Morrison's claim is without merit.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of Strickland.

D.   <u>SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 5)</u>

Morrison alleges that his conviction was contrary to the law and evidence because the evidence was insufficient to support the verdict.  Morrison claims that the only real evidence submitted by the State was the self-serving testimony of Fourcha, whose credibility was at best questionable in light of his criminal past.  He also alleges that Fourcha's testimony regarding how he was shot and by whom was not believable and was not supported by any physical evidence.  He suggests that doubt existed as to how the events happened, since more bullets and casings were not found in the car.

Morrison raised this claim for the first time in his application for post-conviction review.[60]  The trial court denied relief, finding that the record did not support his claim.  The Louisiana Fourth Circuit and the Louisiana Supreme Court denied his subsequent writ applications without reasons.

A claim of insufficient evidence presents a mixed question of law and fact.  <u>Maes v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

---

[60]Preston unsuccessfully raised insufficient evidence on direct appeal, raising arguments that the evidence at best showed him to be an accessory after the fact rather than a principal to Morrison's shootings.  Rec. Doc. No. 19, 4th Cir. Opinion, 2000-KA-1057, 11/14/01.

The well established federal standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. Jackson, 443 U.S. at 319; Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2000); Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. Guzman, 934 F.2d at 82 (citing Tyler v. Phelps, 643 F.2d 1095, 1102 (5th Cir. 1981)).

Morrison was found guilty of second degree murder, which is defined by Louisiana law as "the killing of a human being . . . when the offender has a specific intent to kill or to inflict great bodily harm." La. Rev. Stat. Ann. § 14:30.1(A)(1). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989).

In this case, the jury heard the testimony of several law enforcement officers who were involved in the investigation and gathering of evidence after the shooting.[61]  Among those officers was Officer Tamatra Green, who testified that he examined and photographed Fourcha's car after the incident and found a nine millimeter Lawson handgun with a clip of 14 rounds in the gun.[62]  He also recovered a rock of cocaine in a small sandwich bag and a .45 caliber spent casing.[63]

Sergeant Joseph Catalanato also testified that he arrested Preston and Morrison for the Lopez murder.[64]  He testified that Fourcha identified Jay Boo (Preston) and Prince (Morrison) as the assailants.[65]  He stated that he learned their real names from other officers who worked in the housing project.  He also testified that they did not locate any witnesses to the shootings.[66]  He also stated that the two partial fingerprints located on Fourcha's car could not be identified.[67]

_____

[61]See St. Rec. Vol. 4 of 7, Trial Transcript Vol. 2, p. 203 (Lieutenant Robert McNeil), p. 210 (Officer Melvin Hunter), p. 215 (Officer Kenneth Leary), p. 241 (Officer Tommy Mercadel), 7/6-8/99.

[62]St. Rec. Vol. 4 of 7, Trial Transcript Vol. 2, pp. 16-17, 7/6-8/99.

[63]Id. at pp. 17-18.

[64]Id. at p. 29.

[65]Id. at p. 31.

[66]Id. at p. 38.

[67]Id. at p. 42.

The jury also heard the testimony of Fourcha, the surviving victim of the shooting. He testified that on the night of the murder, he was driving his sister's car and was with Lopez.[68]  He testified that on several occasions over the course of the night, they ran across and/or spoke with Preston and Morrison.[69]

After meeting at Richards Restaurant, Fourcha and Lopez, in one car, and Preston and Morrison, in another car, drove to the Desire Housing Project and met in a driveway.[70]  While there, the four men exited their cars to meet two girls.  Fourcha testified that he returned to sit in the car and Lopez stayed out to talk with Preston and Morrison.[71]

Soon, the three joined Fourcha in the car.[72]  Fourcha drove them to a liquor store and Preston went in to buy something.[73]  When he returned, Morrison went into the store. The four then drove back to the driveway at the housing project.  Fourcha stated that

---

[68]Id. at pp. 49-50.

[69]Id. at pp. 50-51, 53, 55.

[70]Id. at pp. 55-56.

[71]Id. at p. 56.

[72]Id. at p. 57.

[73]Id. at p. 59.

48

Lopez, Preston and Morrison all carried guns that night and Morrison had the only .45 caliber handgun.[74]

While parked in the driveway, Lopez, Preston and Morrison exited the car for a while.[75]  They got back in the car between 5:00 a.m. and 6:00 a.m.  Morrison directed Fourcha to drive to another location in front of the projects to drop off all three of them.[76]  Fourcha stated that he put the car in park, turned off the lights and left the engine running so they could exit the car.[77]

Fourcha testified that he waited for Lopez to get out of the front passenger seat but he did not move.[78]  Morrison kept urging them to get out of the car.  Morrison then called out, "Oh, man, you fake.  You fake," and then gunshots rang out from the backseat, behind the driver's seat where Morrison was sitting.[79]

---

[74]Id. at pp. 59, 61.

[75]Id. at p. 63.

[76]Id. at p. 77.

[77]Id. at pp. 78, 81.

[78]Id. at p. 78.

[79]Id. at pp. 78-79.

Fourcha was shot in the back of the head and momentarily blacked out.[80]   The bullet exited below his left ear.[81]   When he came to, he saw two bullets exit the side of Lopez's head.[82]   Preston and Morrison exited the car on their respective sides.[83]   Fourcha stated that he could see their reflections in the passenger side mirror.[84]

Fourcha began to moan when he realized he had been shot and raised his arm to see that half of his left thumb was hanging-off.[85]   At that time, he was shot again through his right arm.  The shot came from outside of the passenger side door where Morrison was standing.  Fourcha played dead until the two men ran off.[86]   Before they ran off, Preston threw something back into the car.[87]   He then put the car in drive and drove straight to the St. Claude General Hospital.[88]

---

[80]Id. at pp. 79-80.

[81]Id. at p. 80.

[82]Id. at pp. 79, 81.

[83]Id. at pp. 83.

[84]Id. at pp. 84-85.

[85]Id. at pp. 85-86.

[86]Id. at p. 86.

[87]Id. at p. 88.

[88]Id. at p. 87.

The evidence presented at trial was more than sufficient for the jury to conclude that Morrison had specific intent to kill or cause great bodily harm to Lopez when he shot him twice in the head as he sat motionless in the front seat of the car.

Morrison suggests that Fourcha's testimony was not credible because there was no other confirming support for what he told the police or the jury. The fact that conviction may have been based on the credibility of witness testimony is insufficient to supplant the jury's determination of guilt. Green v. Johnson, 160 F.3d 1029, 1047 (5th Cir. 1998). Review of the sufficiency of the evidence does not include review of the weight of the evidence or of the credibility of the witnesses. Schlup v. Delo, 513 U.S. 298, 330 (1995) (under Jackson resolving credibility issues is generally beyond the scope of appellate review); United States v. Goff, 155 Fed. Appx. 773 (5th Cir. 2005) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir.1993)). Instead, the narrow standard of review under Jackson "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. "The trier of fact has broad discretion to 'resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Green, 160 F.3d at 1047 (quoting Jackson, 443 U.S. at 319). The jury was acting well within its discretion to weigh Fourcha's credibility and reach a verdict of guilty.

51

There was sufficient evidence at trial for a rational factfinder to conclude that Morrison was guilty of second degree murder.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of <u>Jackson</u>.  Morrison is not entitled to relief on this claim.

E.      <u>DENIAL OF THE MOTION TO SEVER (CLAIM NO. 7)</u>

Morrison alleges that the state trial court erred in denying his motion for severance.  The issue of whether Fourcha had seen Preston with a bag of cocaine earlier on the evening of the shooting arose during trial.[89]  In a conference in chambers, Fourcha told the judge, under oath, that he had seen Morrison's co-defendant, Preston, sitting with a bag of 20 rocks of cocaine and counting money.[90]  The state trial court excluded the testimony as inadmissable because it was "other crimes" evidence as to Preston.[91]  Morrison's counsel objected and moved for a severance on the basis that the cocaine information would go to the credibility of Fourcha and could cast a different light on the

---

[89]St. Rec. Vol. 4 of 7, Trial Transcript Vol. 2, pp. 64-75, 7/6-8/99.

[90]<u>Id.</u> at pp. 70-71.

[91]<u>Id.</u>; Rec. Doc. No. 19, 4th Cir. Opinion, 2000-KA-1057, 11/14/01.

culpability of the co-defendant, Preston.[92]   The court denied the request finding no grounds for a severance.[93]

Morrison argues that the failure to sever denied him the ability to fully cross-examine and impeach Fourcha regarding this late received information concerning regarding cocaine.[94]

The claim was raised on direct appeal by Morrison's counsel.  The court held that Morrison was not entitled to a severance under Louisiana law.  The court resolved that Morrison sought to use the statements only to impeach Fourcha's testimony and the statements were not indicative of an antagonistic defense to that of Preston.  The court further found that Morrison's counsel had other information regarding Fourcha's criminal history, which he used to impeach Fourcha.  This was the last reasoned opinion on the issue.

Once again, Morrison has alleged that a state court ruling was contrary to state law.  This fails to allege a constitutional violation reviewable by a federal habeas corpus court.  Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).  Federal courts on habeas

---

[92]St. Rec. Vol. 4 of 7, Trial Transcript Vol. 2, pp. 74-75, 7/6-8/99.

[93]Id. at p. 75.

[94]The state trial court had already ruled that the officers and Fourcha could testify that one rock of cocaine was discovered in the car and Fourcha believed that Preston threw it into the car before they left after the shooting.

review determine only whether the proceedings violated due process such that the violation rendered the criminal proceeding fundamentally unfair.  Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

There is nothing to indicate that Morrison was denied a fair trial or due process as a result of the state trial court's denial of a severance.  Under Louisiana law, defendants who are jointly charged will be tried jointly, unless upon motion of the defendant and after a hearing, the trial court is satisfied that the ends of justice require severance.  La. Code Crim. P. art. 704(2).  To establish that justice requires a severance, a defendant must show by convincing evidence that his defense will be antagonistic to the defense offered by the other defendant.  State v. Vale, 650 So.2d 379, 385 (La. App. 5th Cir. 1995), aff'd in part, rev'd in part on other grounds, 666 So.2d 1070 (La. 1996).

As an initial consideration, Morrison has not alleged a factual or legal basis to support this claim, nor has he described defense strategies that were antagonistic to that of his co-defendant, or vice versa.  In fact, both defendants pursued the entrapment defense on the basis that the officers sought them out to complete a drug transaction and that neither was otherwise engaged in drug distribution at the time.

Nevertheless, the record reflects that the defenses offered by Preston and Morrison were not antagonistic, but were consistent, and the case did not qualify for severance under Louisiana law.  Both Preston and Morrison sought to establish that Fourcha's story was not credible.  They sought to demonstrate that his story was without physical evidence to support his claim that either man was involved or that it happened as he claimed it did.  The defenses were not antagonistic because the trier of fact was not necessarily required to disbelieve the testimony offered on behalf of Morrison to believe the core of the testimony offered on behalf of the co-defendant.  See United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir. 1981).

The denial of relief was not contrary to, or an unreasonable application of, Supreme Court law.  Morrison is not entitled to relief on this claim.

F.      INADMISSABLE HEARSAY (CLAIM NO. 8)

Morrison alleges that the state trial court erred in allowing the State to cross-examine Officer Tommy Mercadel regarding the contents of his police report.  Morrison argues that counsel for Preston called Mercadel to address statements in his police report that appeared to be in conflict with Fourcha's trial testimony.  He complains that the State's extended cross-examination introduced other details about Fourcha's statements beyond the scope of those statements, which Fourcha denied making.  He further alleges that defense counsel's objections were overruled by the trial court on the erroneous

55

finding that the testimony was admissible hearsay as a recorded recollection.  Morrison alleges that the State's questions of Mercadel were leading and beyond the scope of direct and Mercadel's answers amounted to inadmissable hearsay that violated his rights under the Confrontation Clause.

Morrison raised this issue on direct appeal.  The Louisiana Fourth Circuit found the claim to be without merit.  The court nevertheless commented that the police report was not admissible under Louisiana evidence rules.  The court also found that the State's questions were so detailed that it amounted to a reading of the inadmissable report and the trial court erred under Louisiana law in allowing this line of questioning.  The court held, however, that the testimony was cumulative and corroborative of Fourcha's testimony and Officer Mercadel's direct testimony.  The error was therefore harmless under Sullivan v. Louisiana, 508 U.S. 275 (1993).  The court also determined that, in light of the unrefuted eyewitness testimony of Fourcha, the error did not affect the verdict.  This was the last reasoned decision on the issue.

I first note that, to the extent Morrison alleges that the prosecutor's questions were objectionable as leading and beyond the scope of direct, he is not entitled to federal habeas relief.  Habeas corpus review is limited to constitutional questions and federal courts generally do not review evidentiary rulings made under state law.  Jernigan, 980 F.2d at 298.  States are free to implement procedures regarding the admission of

evidence, provided that those procedures do not infringe on a constitutional guarantee. Burgett v. State of Texas, 389 U.S. 109 (1967). Whether the questions were leading or otherwise inappropriate under Louisiana law, is not an issue reviewable by this court.

Morrison also alleges that Mercadel's cross-examination testimony amounted to inadmissible hearsay. Hearsay is defined by La. Code Ev. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible at trial. La. Code Evid. art. 802. However, La. Code Evid. arts. 803 and 804 provide many exceptions to the hearsay rule, none of which apply to this discussion.

The Louisiana Fourth Circuit determined that the state trial court should not have allowed the State's line of questioning because it essentially allowed Mercadel to present testimony about the contents of the police report which otherwise would have been inadmissable hearsay under Louisiana law. While this may true, Morrison has not alleged a constitutional violation which would warrant federal habeas corpus relief.

"The wrongful admission of hearsay evidence violates the Confrontation Clause only when the evidence was a crucial, critical or highly significant factor in the framework of the whole trial." Gochicoa v. Johnson, 118 F.3d 440, 446 (5th Cir. 1997). In making this determination, the court must consider the following five factors.

(1) whether the hearsay evidence was "crucial" or "devastating;"

57

(2) whether prosecutors misused a confession or otherwise engaged in misconduct;
(3) whether a joint trial or the wholesale denial of cross-examination was involved;
(4) whether the most important prosecution witness, as well as other prosecution witnesses, was available for cross-examination; and
(5) the degree to which the hearsay evidence is supported by indicia of [its] reliability.

Id. (citations omitted).

The most important factors are the first and the last.  Id.  As to the first factor, "[t]he determination of whether the evidence is 'crucial' or 'devastating,' on the other hand, recognizes that the erroneous admission of unreliable hearsay may nonetheless be harmless in light of other evidence at trial; by examining whether hearsay was 'crucial' or 'devastating,' the court seeks to determine whether the impermissible hearsay evidence was sufficiently damaging to the defense to warrant reversal."  Gochicoa, 118 F.3d at 446-47 (citations omitted).  The "crucial" and "devastating" prong of the test is equivalent to harmless error.  Gochicoa v. Johnson, 238 F.3d 278, 286, 287 n.11 (5th Cir. 2000).

As to the fifth factor, "[a] statement of an unavailable witness is sufficiently reliable only if it falls within a firmly rooted exception to the hearsay rule or if it carries particularized guarantees of trustworthiness."  Id. at 446.  These "particularized guarantees of trustworthiness" must be drawn from the totality of the circumstances

surrounding the making of the statement.  Idaho v. Wright, 497 U.S. 805, 820 (1990);

United States v. Ismoila, 100 F.3d 380, 393 (5th Cir. 1996).

In Morrison's case, Mercadel's cross-examination testimony was neither crucial

nor devastating.  As noted by the Louisiana Fourth Circuit, the cross-examination

testimony was cumulative of the testimony already given by Fourcha and the police

witnesses.  Mercadel was called as an impeachment witness for Preston's defense.[95]  His

direct testimony revealed that, to his recollection and based on his police report, Fourcha

had told him that Lopez had pointed a gun at Morrison.[96]  This was contrary to Fourcha's

testimony that Lopez sat quietly in the car.

On cross-examination, the prosecutor apparently tried to show that Fourcha's

testimony was consistent overall with the statements made to Mercadel as recorded in the

police report.  Whether appropriate under Louisiana law, the prosecutor asked the officer

about the details of the evening to which Fourcha had already testified, including for

example, the places Fourcha, Lopez, Morrison and Preston had gone or met over the

course of the night.[97]  Fourcha had already been cross-examined by defense counsel as

to these events.  Mercadel also answered redirect questions in which defense counsel

---

[95]St. Rec. Vol. 4 of 7, Trial Transcript Vol. 2, p. 248, 7/6-8/99.

[96]Id. at p. 244.

[97]Id. at p. 252.

sought to establish that no one was located to corroborate the statements made by Fourcha to Mercadel.[98]

A review of this testimony demonstrates that the defense was not so damaged by Mercadel's cross-examination testimony that it could be said to rise to the level of a constitutional violation. Mercadel's testimony confirmed the statements made to him by Fourcha. Fourcha had already testified and his testimony was challenged by the defense on cross-examination.

The record does not support a finding that any hearsay admitted was crucial or devastating or that Morrison was denied the opportunity thoroughly to cross-examine the real declarant, in this case Fourcha. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of, Supreme Court precedent. Morrison is not entitled to relief on this claim.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Prince Morrison for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10)

---

[98]Id. at p. 256.

days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____9th_____ day of October, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE